# UNITED STATES  DISTRICT COURT

## Northern District of California

SUZANNE Y. MITCHEL,

                Plaintiff,

  v.

ERIC H. HOLDER, JR., Attorney General of
the United States Department of Justice, *et al*.,

                Defendants.

_____/

No. C 08-00205 MEJ

**ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Pending before the Court is Defendant United States of America's Motion for Summary Judgment (Dkt. #25) and Plaintiff Suzanne Mitchel's Cross-Motion for Summary Judgment (Dkt. ##31, 32).  The parties have fully-briefed both Motions.[1]  On April 9, 2009, the Court held a hearing on the Motions and heard oral argument from both parties.  After thoroughly considering the parties' briefs, supporting materials, and oral argument, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiff's Cross-Motion for Summary Judgment.

---

[1]On March 26, 2009, Defendant filed a combined Reply in support of its Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion.  (Dkt. #35.)  The parties thereafter stipulated that Defendant would file an amended, consolidated Reply and Opposition in place of the previously-filed brief.  (Dkt. #36.)  On March 30, Defendant filed its amended Reply/Opposition.  (Dkt. #37.)  Defendant also filed Objections to Plaintiff's Affidavit she submitted along with her Opposition.  (Dkt. #40.)  On March 31, 2009, Plaintiff filed a Sur-Reply in support of her Cross-Motion.  (Dkt. #42.)  Additionally, in response to a letter Plaintiff's counsel submitted to the Court on May 27, 2009, regarding newly-discovered evidence relevant to Defendant's exhaustion of administrative remedies argument, the Court granted Plaintiff leave to file a declaration with the newly-discovered evidence, and also granted the parties leave to file supplemental briefs addressing such evidence.  (Dkt. #46.)  On June 8, 2009, Plaintiff filed her Supplemental Brief re: Additional Evidence (Dkt. #48), to which Defendant filed a Reply brief on June 12, 2009 (Dkt. #50).

# I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff brings this lawsuit for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a).[2]  (Dkt. #1, "Complaint.")  Except where indicated, the following facts are undisputed.

In 2001, Plaintiff began working as a Food Services Assistant for the Department of Justice, Federal Bureau of Prisons ("BOP") at the United States Penitentiary in Atwater, California ("USP Atwater").  (Compl. ¶2.)  In March 2005, Rafael Cortez became the Food Services Administrator, and therefore Plaintiff's supervisor, at USP Atwater.  (Compl. ¶5; Dkt. #28, Simmons Decl., Ex. 1, Mitchel Tr. 14:10-12.)  Plaintiff alleges that beginning in August 2005, and continuing over the course of the next year, Mr. Cortez repeatedly made lewd and inappropriate sexual comments and gestures in the workplace setting, often directed at Plaintiff.  (Compl. ¶10(a).)

On October 5, 2006, Plaintiff filed a four-page written complaint to USP Atwater's Equal Employment Opportunity counselor, Deborah Lorance, setting forth a chronology of Mr. Cortez's alleged offensive conduct.  (Compl. ¶18; Dkt. #29, Decl. of Agency Counsel Steven R. Simon, Ex. 1; Dkt. #35, Schallert Decl., Ex. R, 3/6/2009 Dep. of Deborah Lorance at 14:25-15:4.)  The complaint was forwarded to USP Atwater's Warden, Dennis Smith, and an internal investigation into the charges was conducted.  (Compl. ¶18; Simon Decl. Ex. 2.)  Thereafter, on November 6, 2006, after the issues raised in Plaintiff's claim were unresolved, Plaintiff filed a formal Complaint of Discrimination with the Department of Justice.[3]  (Simon Decl., Bates Nos. MUK000020-23, MUK00052; Schallert Decl. Ex. F.)  In the section of the EEO complaint asking Plaintiff to check boxes indicating why she believed she was discriminated against, Plaintiff checked boxes corresponding to "sex," "female," and "sexual harassment."  (*Id.*)  On February 8, 2007, EEO

---

[2]Title VII protects government employees from discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16(a).  After pursuing administrative remedies, a government employee may file a civil lawsuit against his or her employer under 42 U.S.C. § 2000e-16(c).

[3]Plaintiff's EEO complaint was considered "filed" on November 18, 2006 - the date it was postmarked.  (Dkt. #29, Declaration of Steven R. Simon at 8 (MUK000055).)

1    Officer Mina Raskin wrote Plaintiff a letter indicating that it had accepted her sexual harassment

2    claim for investigation by the EEO.  (Simon Decl., MUK000055-56.)

3         Subsequently, on October 25, 2007, the EEO sent Plaintiff a letter informing her that because

4    more than 180 days had passed since she filed her EEO complaint, she had the right to file a civil

5    action in federal court.  (Compl. ¶19.)

6         Thereafter, on January 11, 2008, Plaintiff initiated this action by filing a Complaint against

7    Defendants BOP and United States Attorney General Michael Mukasey.[4]  (Dkt. #1.)  In her

8    Complaint, Plaintiff asserts claims for sexual harassment, hostile work environment, gender

9    discrimination, retaliation, and quid pro quo discrimination.  (Compl. ¶10(a)-(e).)

10        On March 5, 2009, Defendant filed its Motion for Summary Judgment.  (Dkt. #25.)  On

11   March 19, 2009, Plaintiff filed her Opposition and concurrently filed her Cross-Motion for Summary

12   Judgment.  (Dkt. ##31, 32.)  Subsequently, on April 9, 2009, the Court held oral argument on the

13   pending Motions.  Following oral argument, the Court granted the parties leave to file supplemental

14   briefs addressing certain evidence contained in Plaintiff's EEOC administrative file.  (Dkt. #46.)

15   After careful consideration of the parties' arguments and a thorough review of the evidence

16   proffered in support, the Court now rules as follows.

## II.  LEGAL STANDARD

18        Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is

19   no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

20   law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  An issue of fact is "material" if,

21   under the substantive law of the case, resolution of the factual dispute might affect the outcome of

22   the case.  *Id*. at 248.  A dispute over a material fact is "genuine" if "the evidence is such that a

23   reasonable jury could return a verdict for the nonmoving party."  *Id*. at 249.  Accordingly, a genuine

24   issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the

25   evidence in the light most favorable to that party, could resolve the material issue in his or her favor.

27        [4]Pursuant to Federal Rule of Civil Procedure 25(d), Eric Holder is automatically substituted
28   for Michael Mukasey as a defendant in this case.

UNITED STATES DISTRICT COURT
For the Northern District of California

*Id.* However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If the non-moving party fails to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. The non-movant's bare assertions, standing alone, are insufficient to create a genuine dispute as to a material fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248-49. Rather, the non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "General references without page or line numbers are not sufficiently specific." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan*, 91 F.3d at 1279; *see Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In ruling on a motion for summary judgment, any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

### A. Overview of the Parties' Motions

In its Motion, Defendant seeks summary judgment on Plaintiff's sexual harassment and retaliation claims. Specifically, Defendant contends that Plaintiff cannot establish the requisite

elements of the prima facie case to maintain her hostile work environment and that Plaintiff failed to exhaust her administrative remedies with respect to her retaliation claim. In her Cross-Motion, Plaintiff contends that the evidence supports entry of summary judgment in her favor on both claims. The Court will first address the parties' competing arguments with respect to Plaintiff's sexual harassment claim, and will then turn to their arguments regarding Plaintiff's retaliation claim.

**B.      Plaintiff's Sexual Harassment Claim**

      1.      <u>Defendant's Challenges</u>

      In its Motion, Defendant first contends that it is entitled to summary judgment on Plaintiff's sexual harassment claim because Plaintiff cannot establish a prima facie case of sexual harassment. (Mot. At 10.) Defendant asserts that, in light of prior Ninth Circuit decision, Plaintiff's allegations regarding Mr. Cortez's conduct are insufficient to support a hostile work environment claim. Plaintiff, however, maintains that she has set forth adequate facts to maintain her claim. The Court agrees with Plaintiff.

      *a.      Hostile Work Environment - Prima Facie Case*

      Sexual harassment claims fall into two categories: *quid pro quo* or hostile work environment. *Burlington v. Ellerth*, 524 U.S. 742, 751-53 (1998); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). "A quid pro quo claim, as the name implies, occurs when a supervisor demands sexual favors in return for a job benefit." *Brooks*, 229 F.3d at 923. "A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." *Id.* In this case, Defendant is challenging the viability of Plaintiff's hostile work environment claim.

      To establish a *prima facie* case of a hostile work environment under Title VII, a plaintiff must show: (1) she was "subjected to verbal or physical conduct of a ... sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir.

1999). Further, the work environment "must be both objectively and subjectively offensive, one that a reasonable [woman] would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).

Defendant's challenge to Plaintiff's hostile work environment claim focuses on whether Plaintiff has sufficient facts to support a finding that Mr. Cortez's conduct created an objectively hostile work environment. Specifically, Defendant charges that, "Plaintiff's allegations regarding FSA Cortez' occasional offensive comments and the invitation to his apartment do not raise a triable issue of fact to support the 'severe and pervasive' element of the *prima facie* case of sexual harassment." (Mot. at 10.)

"The objective measure of an abusive working environment is set by what a reasonable woman would consider abusive." *Davis v. Team. Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008); *Ellison v. Brady*, 924 F.2d 872, 879-80 (9th Cir. 1991). In evaluating whether conduct was sufficiently severe or pervasive to violate Title VII, courts examine the totality of the circumstances, including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787-88 (quoting *Harris*, 510 U.S. at 23). "The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Ellison*, 924 F.2d at 878). "Simple teasing . . . offhand comments, and isolated incidents (unless extremely serious)," do not amount to a hostile or abusive work environment. *Faragher*, 524 U.S. at 788 (internal quotations and citation omitted); *see Davis,* 520 F.3d at 1095. In contrast, a working environment is considered abusive at a point when "hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Davis v. Team. Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). Offensive comments do not all need to be made directly to an employee for a work environment to be considered hostile. *Id.*

*b.*     *Analysis of the Parties' Arguments and Evidence*

As indicated above, Defendant contends that Plaintiff cannot meet her burden of demonstrating that Mr. Cortez's conduct was severe enough to create a hostile work environment. In support of its position, Defendant cites five decisions: *Kortan v. Cal. Youth Authority*, 217 F.3d 1104 (9th Cir. 2000); *Jordan v. Clark* 847 F.2d 1368 (9th Cir. 1988); *Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588 (9th Cir. 1992); *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003), and *Cleese v. Hewlett-Packard Co.*, 911 F. Supp. 1312 (D. Or. 1995). While Defendant provides limited discussion of these cases, it makes no attempt to actually analyze the facts of this case in light of these authorities. Rather, Defendant summarily concludes in its Reply that, "[i]n light of *Vasquez* and *Kortan*, [P]laintiff simply cannot make out a case that Cortez' conduct was sufficient to establish a hostile work environment." (Reply at 8.) Plaintiff's Opposition does not fare much better. While Plaintiff spends pages reciting her account of the facts and evidence, Plaintiff's only arguments in response is that the cases Defendant has cited are inapposite to the facts of this case. Thus, the Court is presented with pages of competing evidence regarding alleged conduct by Mr. Cortez, which neither party has attempted to actually discuss or analyze in light of controlling authority.

Carefully reviewing the evidence the parties have submitted in light of the Supreme Court and Ninth Circuit decisions analyzing hostile work environment claims, the Court finds that Plaintiff has proffered sufficient evidence to create a genuine dispute as whether Mr. Cortez's conduct created an abusive working environment.

*i.*     *Plaintiff's Proffered Evidence*

In her Opposition/Cross-Motion, Plaintiff proffers over five pages of facts concerning Mr. Cortez's conduct, which Plaintiff maintains establishes that he created a hostile work environment. The difficulty in assessing whether these facts are sufficient to withstand Defendant's summary judgment motion is that in numerous instances, the record citation that Plaintiff proffers in support of a particular fact does not actually support the fact. The Court's review of Plaintiff's proffered facts and evidentiary support is as follows.

1      Plaintiff proffers that Mr. Cortez, "falsely and regularly asserted that Ms. Keca Carpenter

2 was having intimate relations with inmates in various locations in Food Services." (Opp. at 5.)

3 Plaintiff has proffered testimony from Elijah George and Juan Flores indicating that they heard Mr.

4 Cortez make such statements in support of this fact.

5      Plaintiff next proffers that Mr. Cortez commented on the size of Denise Richards' breasts,

6 asked Ms. Richards to prove that they were "real," and circulated a bet on whether Ms. Richards'

7 breasts were surgically enhanced. (Opp. at 5.) Plaintiff has proffered testimony from Mr. George

8 and Juan Quirarte indicating that they heard such rumors. Plaintiff has also proffered testimony

9 from Juan Flores, who indicated that Plaintiff was in the office at the time when Mr. Cortez

10 "insinuated something" about Ms. Richards' breasts. (Schallert Decl., Ex. N, "10/23/2008

11 Deposition of Juan Flores, 47:10-15.)

12      Plaintiff next submits that Mr. Cortez "regularly talked about the size and sex appeal of Ms.

13 Peggi Barbarina-Sahota's breasts." (Opp. at 5.) Plaintiff has cited to testimony from Mr. George

14 indicating that, at least on one instance, Mr. Cortez made such statements about Mr. Barbarina-

15 Shota's breasts and gestured about the size of her breasts in Plaintiff's presence. (Schallert Decl.,

16 Ex. J, 10/20/2008 Decl. of Elijah George, 72:12-25).

17      Plaintiff next proffers that Mr. Cortez "circulated a false rumor that Mrs. Mitchel was having

18 an affair with Lieutenant Shank." (Opp. at 5.) Reviewing the evidence Plaintiff cited in support of

19 this fact, neither Anthony Nutt or Juan Quirarte testified that Mr. Cortez either started or perpetuated

20 the rumor. (Schallert Decl., Ex. O, 10/21/08 Deposition of Anthony Nutt, 24:12-17.; Ex. AA,

21 10.21.08 Deposition of Juan Quirarte, 17:6-10) However, Mr. George testified that Mr. Cortez

22 made a statement to him that Plaintiff and Lt. Shank were having an affair. (Schallert Decl., Ex. J,

23 George Depo. 22:22-23:6.)

24      Plaintiff proffers that Mr. Cortez "falsely told Mr. George, [Plaintiff], and others, that

25 [Plaintiff]'s husband (who also worked at Atwater) was 'a dirty dog' who 'liked young women' and

26 was cheating on [Plaintiff]." (Opp. at 5.) Plaintiff has submitted evidence from two co-workers

27 indicating that Mr. Cortez called Plaintiff's husband a dog. Mr. Nutt testified that he did not

28

actually hear Mr. Cortez call Plaintiff's husband a dog or dirty dog, but had heard that Mr. Cortez has said that. (Schallert Decl., Ex. O, Nutt Decl. 26:11-14.) None of the cited evidence, however, supports Plaintiff's allegation that Mr. Cortez said that Plaintiff's husband "liked young women," or was cheating on Plaintiff.

Plaintiff asserts that Mr. Cortez "commented to Caleb Reemer (a cook supervisor) that he didn't mind Corrine Harrell's regular visits to his office 'because of what you got to see,' including Ms. Harrell's 'big butt.'" (Opp. at 5.) Plaintiff, however, does not allege that she either witnessed Mr. Cortez making this statement or even heard about Mr. Cortez making the statement.

Plaintiff next asserts that Mr. Cortez "acted jealously toward any other male worker who entered [Plaintiff]'s office as a necessary part of their work." (Opp. at 5-6.) Plaintiff has cited to deposition testimony from several witnesses which supports this allegation. (Schallert Decl., Ex. N. Flores Depo., 15:6-11; Ex. O, Nutt Depo. 20:9-25; Ex. AA, Quirarte, 28:13-22.) Plaintiff further contends that these rumors spread through the Food Services Department, spurring additional gossip. (Opp. at 6.) She asserts that "[b]y mid-2006, [her] interactions were fraught with concern over which of the false rumors her colleagues may have heard." (Opp. at 6.) She also asserts that the rumors were repeated in front of inmates, which raised issues of safety for female employees. (Opp. at 6.)

Plaintiff also contends that Mr. Cortez accused her husband of infidelity and told her that "she had needs" and that he could show her how to cheat on her husband. (Opp. at 6.) In support, Plaintiff has proffered evidence that Mr. Cortez made such statements to her during a conversation on November 17, 2005. (Schallert Decl., Ex. S, "Plaintiff's Responses First Det of Interrogatories," at 11-12.)

Plaintiff also contends that Mr. Cortez bragged to her and Mr. George that Ms. Graciano "had the hots for him." In support, Plaintiff cites to deposition testimony from Mr. George stating that Mr. George recalls Mr. Cortez making such a statement. (Schallert Decl., Ex. J, George Depo. at 75:21-76:1.) However, Plaintiff has not pointed to any evidence that she either heard or witnessed Mr. Cortez make such a statement.

9

Plaintiff next proffers that "[i]n August 2005, Cortez stated that Ms. Graciano had commented on the size of his large erection; Cortez then acted out how he had been required to walk away from Ms. Graciano holding a piece of paper in front of his crotch to hide his erection." (Opp. at 6-7.) In support, Plaintiff cites to her Response to Defendant's First Set of Interrogatories, question 1, wherein she describes this incident. (Schallert Decl., Ex. S at 9:18-10:7.)[5]

Plaintiff also asserts that in October 2005, Mr. Cortez called her on her cell phone while she was with her children at a skating party and asked if they could have a beer together. (Opp. at 7.) In support of this allegation, Plaintiff points to her Response to Defendant's First Set of Interrogatories, question 1. (Opp. at 7 (citing Schallert Decl., Ex. S at 11:11-17).) She asserts that, soon thereafter, Mr. Cortez boasted to her and Mr. George about how he had dated his former secretary and taken her out to dinner. (Opp. at 7.) Plaintiff cites Mr. George's testimony recalling this incident and stating that - from his perspective - Mr. Cortez "was exploring whether Ms. Mitchel would be interested in going out with him." (Opp. at 7 (citing Schallert Decl., Ex. J, George Depo. at 52:22-53:25).)

Citing her Response to Defendant's First Set of Interrogatories, Plaintiff also asserts that Mr. Cortez told her that she had put on weight and later told her "that she looked good filling out her pants, after which he made squeezing gestures with his hands, accompanied by grunting noises (like a hog)." (Opp. at 7.)

Plaintiff also claims that Mr. Cortez engaged in harassing conduct during their daily interactions. (Opp. at 7.) She contends that Mr. Cortez would stand behind her while she worked at her computer, "accidently" touching her and bending over her so that she could smell his breath while he looked at her. (Opp. at 7 (citing Schallert Decl., Ex. S at 6:3-12).) She claims that Mr. Cortez would stare at her in her office, study her rear end while she walked away, and scrutinize her body when she entered his office and exclaim, "Wow!" (Opp. at 7 (citing Schallert Decl., Ex. S. at 6:13-22).) Plaintiff asserts that one day when she want to Mr. Cortez's office to retrieve records

_____

[5]In her Response, Plaintiff indicates that Mr. Cortez told her that "Mrs. Richards" - not Ms. Graciano had made the statement. (Schallert Decl., Ex. S at 9:18-21.)

UNITED STATES DISTRICT COURT
For the Northern District of California

from behind his desk, he spun around in his chair and hold her he had caught his son "doing

something." (Opp. at 7-8.) She claims that, although she ignored the comment, "Mr. Cortez placed

a ruler sticking up from his crotch and proceeded to stroke it up and down, pantomiming a form of

male masturbation." (Opp. at 8 (citing Schallert Decl., Ex. S at 14:4-19).)

Finally, Plaintiff asserts that in September 2006, Mr. Cortez called her at her home and asked

her to come to his apartment. (Opp. at 8 (citing Schallert Decl., Ex. S at 16).) She claims that after

she reported this incident to Mr. George, who then spoke to Mr. Cortez, Mr. Cortez refused to speak

to Plaintiff about work-related matters and would just throw papers at her desk. (Opp. at 8 (citing

Schallert Decl., Ex. S at 16:7-17:3).)

> ii. *Whether Plaintiff's Evidence is Sufficient for a Jury to Conclude that a Hostile Work Environment Existed.*

After carefully considering the facts Plaintiff has set forth, the Court finds that a triable issue

of fact exists as to whether Mr. Cortez's comments and conduct objectively created a hostile work

environment. Contrary to Defendant's characterization, Mr. Cortez's offensive conduct and

comments were not restricted to a few isolated instances. Rather, Plaintiff has put forth evidence

demonstrating that Mr. Cortez frequently made sexual comments regarding female employees,

including comments about Plaintiff's and other female employees' body parts, which, in at least one

instance, he accompanied with hand gestures and grunting sounds. Mr. Cortez also made comments

accusing Plaintiff's husband of infidelity and offering to teach her how to cheat. Plaintiff has also

put forth facts that Mr. Cortez would frequently stare at her, focusing on various parts of her body,

intentionally and inappropriately touch her while she worked at her computer, described his erection,

and, at least in one stance, simulated masturbation in front of her. Additionally, Plaintiff has put

forth evidence that Mr. Cortez called her in October 2005 and in September 2006 in an attempt to

spend time with her. Taken together, these facts demonstrate that Mr. Cortez's offensive conduct

was not sporadic, but occurred on a consistent basis. Further, the facts demonstrate that his

unambiguous sexual comments and graphic gestures exceeded mere teasing, insults, or offhand

comments. Even if the instances Plaintiff has proffered do not lie at the most extreme end of the

spectrum of offensive behavior, it is the type of conduct that a reasonable jury could determine would make a reasonable woman in Plaintiff's situation feel as though her working conditions were altered. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008) (noting that "where the severity of frequent abuse is questionable, it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment."). At a minimum, Plaintiff has set forth sufficient evidence to raise a genuine dispute as to whether Mr. Cortez's sexually-charged behavior was of a sufficient frequency and severity such that it "polluted [her] workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994).

### iii. *Defendant's Cited Authorities*

Defendant, however, contends that the facts of this case are similar to five other decisions from this circuit where courts held that the alleged discriminatory conduct at issue fell below the threshold necessary to establish an abusive working environment. The Court, however, finds each of the decisions distinguishable on their facts.

Defendant first cites *Kortan v. California Youth Authority*, 217 F.3d at 1106-08, 1110-11, as support for the proposition that a supervisor's offensive, sexist comments do not create an abusive working environment. (Mot. at 10.) In that case, the plaintiff alleged that her supervisor had referred to another former female employee as a "regina," and remarked that the former employee "laughs like a hyena." *Id.* at 1106-07. The plaintiff also proffered that, during the same conversation, her supervisor referred to a former female assistant superintendent as a "madonna," "regina," and a "castrating bitch," and referred to women generally as "bitches" and "histrionics." *Id.* at 1107. The district court granted the defendant's motion for summary judgment on the plaintiff's hostile work environment. *Id.* at 1108. On appeal, in evaluating whether this conduct was sufficient to create a hostile work environment, the Ninth Circuit indicated that "there is no question that [the supervisor's] comments were offensive." *Id.* at 1110. It noted, however, that the supervisor's comments occurred on only a few, limited occasions: "in a flurry on February 3rd," "once or twice" before that date, and again on February 9. *Id.* It noted that "[a]s unpleasant as [the

supervisor's] outburst was, the comments were about other people . . . [h]e never directed a sexual insult at [the plaintiff.]" *Id*. The Ninth Circuit also contrasted the facts of that case with prior decisions and opined that the conduct was not of the same "order of magnitude" as that which had previously been found to create a hostile work environment. *Id*. at 1111. Taking these factors together, the court concluded that "no triable issue exists about whether the conduct was frequent, severe or abusive enough to interfere unreasonably with [the plaintiff's] employment." *Id*. at 1111.

As the description set forth above illustrates, the facts Plaintiff has set forth in this action are markedly different from those in *Kortan*. The allegedly offending conduct in that case occurred over the span of days. Here, in contrast, Plaintiff has set forth facts about Mr. Cortez's conduct spanning more than a year. Thus, the frequency of alleged harassing conduct is far greater in this case than in *Kortan*. Further, the severity of the conduct and statements at issue in this case is much greater than that at issue in *Kortan*. Beyond mere comments - which were exclusively at issue in *Kortan* - Plaintiff has alleged both sexual statements *and actions* by Mr. Cortez as the basis of her claim. Moreover, in *Kortan*, only one of the sexual insults was directed at the plaintiff; here, in contrast, Plaintiff has proffered facts demonstrating that on several occasions Mr. Cortez made statements and targeted his actions directly at her. The Court therefore fails to see how *Kortan* advances Defendant's claim.

Defendant next cites *Jordan v. Clark*, 847 F.2d at 1374, in support of its argument. (Mot. at 10.) In *Jordan*, the plaintiff appealed the district court's dismissal of her sexual harassment claim after it concluded that the plaintiff "was not subjected to harassment which rose to the stature of a condition of employment or an abusive working environment." *Id.* at 1374. The plaintiff had alleged that her supervisor harassed her by calling her at home, touched her inappropriately at work, made sexist comments at work, and told her that she would have to sleep with him in order to keep her job and get a promotion. *Id*. On appeal, the Ninth Circuit pointed out that the district court had considered these allegations during the bench trial, but found that the plaintiff had failed to provide sufficient evidence substantiating many of the allegations. *Id*. The Ninth Circuit further held that, based on the evidence before the trial court, it did not err in concluding that an abusive environment

13

did not exist. *Id*. The court therefore affirmed the dismissal of the plaintiff's hostile work

environment claim. *Id*.

Because of the procedural posture of the instant matter, *Jordan* provides little guidance. In

*Jordan*, the court determined that the plaintiff had not established that her supervisor subjected her

to a hostile work environment after holding a bench trial where both sides presented evidence. Here,

in contrast, at the summary judgement stage the Court's inquiry is limited to assessing whether

Plaintiff has set forth sufficient evidence to raise a triable issue of fact. The Court does not either

weigh the record evidence or make credibility determinations, unlike the court in *Jordan*.[6] As

detailed above, in this matter Plaintiff has presented evidence supporting her allegations concerning

Mr. Cortez's offensive conduct. Thus, as was the case in *Jordan*, Plaintiff's claim is properly

resolved at trial.

Next, Defendant cites *Candelore v. Clark County Sanitation District*, 975 F.2d at 590.

(Mot. at 10.) In that case, the plaintiff argued that a co-worker's affair with a supervisor created a

hostile work environment.[7] *Id*. The Ninth Circuit affirmed the district court's grant of summary

judgment in favor of the defendant, finding that plaintiff had failed to establish that her co-worker's

affairs created a hostile work environment. Specifically, the Ninth Circuit noted that the evidence

showed that the conduct occurred outside of the workplace or after business hours. *Id*. The court

also noted that a co-worker's romantic involvement with a supervisor, without more, did not create a

hostile work environment. *Id*. (citing *Drinkwater v. Union Carbide Corp*., 904 F.2d 853, 862 (3d

Cir. 1990). Further, citing *Jordan*, the court found that, "the isolated incidents of sexual horseplay

alleged by Candelore took place over a period of years and were not so egregious as to render

---

[6]Notably, although the district court ultimately dismissed the plaintiff's hostile work
environment claim, the district court had previously denied the government's motion for partial
summary judgment, and allowed plaintiff's claims - including her hostile work environment claim -
to proceed to trial. *Id*. at 1371-72.

[7]The plaintiff in *Candelore* did not assert a claim pursuant to Title VII, but rather asserted a
claim pursuant to 42 U.S.C. § 1983 for sex discrimination and a state claim for intentional infliction
of emotional distress premised on the sexual harassment. *Candelore*, 975 F.2d at 590.

Candelore's work environment 'hostile.'" *Id.*

Measuring the facts in the instant case against those in *Candelore*, it is difficult to see how that decision provides any guidance. Unlike the plaintiff in *Candelore*, Plaintiff has presented facts regarding a series of comments and acts by Mr. Cortez spanning over a year. With the exception of the phone calls Mr. Cortez made to Plaintiff, all of the alleged harassing statements and behavior occurred at Plaintiff's workplace and during business hours. Moreover, unlike the affairs at issue in *Candelore*, which did not directly involve the plaintiff, in this action Plaintiff has alleged that Mr. Cortez specifically directed multiple statements and actions at her. For these reasons, Defendant's reliance on *Candelore* is misplaced.

Next, Defendant cites *Cleese* in support of its position. In that case, the plaintiff sued her employer for sexual harassment under Title VII, alleging that comments by her co-worker created a hostile work environment. 911 F. Supp. at 1320. The district court, however, determined that the comments were legally insufficient to rise to the level of sexual harassment. *Id.* at 1320. In reaching its decision, the court first noted that several of the comments, while offensive to the plaintiff, were not sexual in nature.[8] *Id.* at 1321. Additionally, the court considered two other comments that the plaintiff's co-worker made that were sexual in nature. Specifically, upon learning that the plaintiff was pregnant, the co-worker commented on the size of the plaintiff's breasts by stating that "the baby's sure going to have a mouthful." *Id.* The co-worker also commented that the women who worked in the lab area were inferior. *Id.* As to these comments, the court found that they were "mere offensive comments," and were not sufficiently severe or pervasive so as to have altered the condition of the plaintiff's working environment. *Id.* The court therefore granted summary judgment in favor of the defendant.

Evaluating the facts of this case against those at issue in *Cleese*, Plaintiff has presented evidence that Mr. Cortez went further than making two sexually-charged comments. She has

---

[8]These comments included the phrases "spandex queen," which the court found to be a reference to the plaintiff's clothing, and "Hot Lips," which the court found to be a reference to a television show character who was played by an actress who shared the plaintiff's name. *Id.* at 1321.

proffered evidence indicating Mr. Cortez made several sexual comments about her and other female employees, and made sexually-explicit gestures in Plaintiff's presence. Thus, Plaintiff has presented a stronger case in support of her hostile work environment claim than the plaintiff did in *Cleese*.

Finally, Defendant cites *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2004), in support of its request for summary judgment. (Reply at 7-8.) In that case, the plaintiff asserted that racially-based harassment by his co-worker created a hostile work environment. *Id*. at 642. The district court granted summary judgment for the defendant-employer, finding that alleged harassment was not severe or pervasive enough to create a hostile work environment. *Id*. at 639. On appeal, the Ninth Circuit reviewed the evidence the plaintiff had presented in support of his hostile work environment claim and affirmed the district court's ruling. *Id*. at 642-63. The court noted that, while the plaintiff alleged that his co-worker continually harassed him, he "provide[d] specific factual allegations regarding only a few incidents." *Id*. Specifically, the plaintiff's proffered evidence about two racially-based comments occurring six months apart, two incidents when the co-worker yelled at plaintiff, and that the co-worker made false complaints about the plaintiff to their supervisor. *Id*. at 643. Comparing these incidents to other Ninth Circuit decisions regarding hostile work environment claims based on both sexual and racially harassment,[9] the court found that, in light of those decisions, the conduct did not rise to the level of severity and pervasiveness necessary to create an abusive working environment. *Id*. at 644.

As with the other decisions Defendant cites, the Court finds *Vasquez* distinguishable on its facts. In that case, the plaintiff had only presented evidence of a few incidents of offensive behavior. Here, Plaintiff has come forward with far greater evidence demonstrating that Mr. Cortez's sexually-based comments and actions were both severe and frequent enough to alter the conditions of her employment.

### iv. Conclusion

In sum, the Court finds that Plaintiff has set forth sufficient evidence to survive summary

---

[9]The Ninth Circuit reviewed *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998); *Nichols*; and *Kortan*.

1   judgment on her hostile work environment claim.  Accordingly, the Court **DENIES** Defendant's

2   Motion on this basis.

3           2.      Burlington-Faragher Affirmative Defense

4           Next, Defendant contends that it is entitled to summary judgment because it cannot be held

5   vicariously liable for any hostile work environment claim premised on Mr. Cortez's conduct.  (Mot.

6   at 10.)  Under federal law, the applicable standards and burdens relating to employer liability for

7   sexual harassment vary with the circumstances of the case.  *See Nichols*, 256 F.3d at 875.  When

8   harassment by a supervisor is at issue, the employer may be held vicariously liable, subject to a

9   potential affirmative defense, referred to as the *Faragher/Ellerth* defense.  *Id.* (citing *Faragher*, 524

10  U.S. at 780.).  For the defense to apply, the defendant-employer must show that: "(1) it exercised

11  reasonable care to prevent and correct promptly any sexual harassment, and (2) the employee

12  unreasonably failed to take advantage of preventative or corrective opportunities offered by the

13  employer, or to avoid harm otherwise."  *Davis*, 520 F.3d at 1096-97 (citing *Burlington Indus., Inc. v.*

14  *Ellerth*, 524 U.S. 742, 765 (1998)).  "This defense is available, however, only if the harassment did

15  not culminate in a 'tangible employment action, which is a significant change in employment status,

16  such as discharge or undesirable reassignment."  *Id.* (quoting *Hardage v. CBS Broad., Inc.*, 427 F.3d

17  1177, 1183 (9th Cir. 2005)).  The defendant-employer must establish each prong of the defense by a

18  preponderance of the evidence.  *Nichols*, 256 F.3d at 877 (citing *Burlington Indus., Inc.*, 524 U.S. at

19  765).  Here, Defendant contends that it may invoke the *Faragher/Ellerth* defense because Plaintiff

20  did not experience any tangible employment action, and because both prongs of the defense are

21  satisfied.

22          As a threshold requirement, before Defendant may avail itself of the affirmative defense, it

23  must show that no tangible adverse employment action was taken against Plaintiff.  *Nichols*, 256

24  F.3d at 877.  In its Motion, Defendant asserts that Plaintiff's claim does not encompass a tangible

25  employment action.  (Mot. at 11.)  Plaintiff, however, argues that, as a result of her complaints about

26  Mr. Cortez's harassing conduct, she was transferred out of Food Services to a less desirable position

27  in the chapel, where she was subjected to abuse by male inmates.  Plaintiff also has presented

28

                                                17

evidence that she suffered modifications to her job functions as a result of Mr. Cortez's harassment. (Mot. at 23; Schallert Decl., Ex. T.)  Because a change in employment status, including an undesirable reassignment with significantly different responsibilities, may constitute a tangible employment action, Plaintiff has presented sufficient evidence to raise a triable issue of fact on this component of the defense. *See Davis*, 520 F.3d at 1097.

Further, questions of fact exist as to both of the substantive components of the affirmative defense.  Under the first prong, the Court must examine whether Defendant exercised reasonable care to prevent and promptly correct Mr. Cortez's conduct.  Looking first at the preventative measures Defendant had in place, Defendant argues that "it is beyond dispute that the Bureau of Prisons has established and disseminated a tough policy against sexual harassment."  (Mot. at 11.) However, the existence of a harassment policy does not, standing alone, establish that an employer acted reasonably.  *See Nichols*, 256 F.3d at 877-78.  Further, aside from citing two pages of Warden Smith's deposition and the policy in general, Defendant has not set forth any *discussion* of the terms of the policy or why it is adequate in this case.

The other component of the first prong of the defense examines the corrective actions the employer took in response to reports of sexual harassing conduct.  *Davis*, 520 F.3d at 1097.  On this point Defendant summarily argues that, "after Plaintiff complained, the Bureau of Prisons exercised reasonable care to prevent and promptly correct Cortez' allegedly sexually harassing behavior." (Mot. at 11.)  Defendant, however, fails to provide a single citation to the evidentiary record in support of its argument that the BOP exercised reasonable care after Plaintiff complained about Mr. Cortez's conduct.  Rather, Defendant simply cites *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1180 (9th Cir. 2001).  While *Kohler* may have addressed this issue, Defendant has not set forth any discussion of how the Ninth Circuit's reasoning in that decision applies to the facts of this case.  As indicated above, Defendant bears the burden of establishing the elements of the affirmative defense by a preponderance of the evidence.  It is not this Court's responsibility to search through the record to find evidence that may support Defendant's argument.  Because Defendant failed to proffer sufficient evidence regarding its preventative and corrective actions, Defendant has not met its

1   burden on the first prong of the defense.

2   Moreover, even assuming that Defendant had put forth some evidence regarding reasonable

3   preventative and corrective actions, Plaintiff has proffered evidence calling the reasonableness of

4   such efforts into question.  In her Opposition, Plaintiff contends that once USP Atwater's

5   management learned of her formal complaint, it responded by transferring her first to the psychology

6   department, and then the chapel.  (Opp. at 9-10, 18.)  Citing the Equal Employment Opportunity

7   Commission's Policy on Supervisor Liability, Plaintiff contends that it was unreasonable to transfer

8   her, the victim, rather than Mr. Cortez, the harasser.  (Op. at 19.)  Plaintiff also argues that the BOP

9   unduly delayed in addressing her complaint.  Specifically, she argues that the BOP took six months

10  after she filed her complaint to issue a letter summarizing her charges against Mr. Cortez, and that it

11  did not sanction Mr. Cortez until four months after that.  (Opp. at 8-9; Schallert Decl., Ex. A.)

12  While Plaintiff also lists a string of other "facts" she claims demonstrate the unreasonableness of

13  Defendant's response on page 20 of her Opposition, Plaintiff fails to provide record cites in support

14  of the majority of such "facts."  As to the two deposition transcripts she cites, Plaintiff omits any

15  citation to the line and page number where the testimony supporting her allegations appears.  Again,

16  it is the parties'- not the Court's -responsibility to compile evidence in support of their positions.

17  Notwithstanding these omissions, the evidence Plaintiff has cited is sufficient create a triable issue

18  of fact on the issue of whether BOP reasonably took corrective action in response to Plaintiff's

19  allegations of sexual harassment by Mr. Cortez.  For this reason as well, summary judgment based

20  on the *Faragher/Ellerth* defense is inappropriate.

21  Turning to the second prong of the defense, Defendant must show that Plaintiff unreasonably

22  failed to take advantage of preventative or corrective opportunities offered by her employer or to

23  otherwise avoid harm.  *Ellerth*, 524 U.S. at 765.  On this point, Defendant argues that  "[t]he second

24  prong of the defense is established by [P]laintiff's admissions that she failed to complain about

25  Cortez' conduct or report it to anyone within the Bureau of Prisons." (Mot. at 11.)  Without citing to

26  the record, Defendant asserts "Plaintiff failed to raise a complaint of sexual harassment

27  notwithstanding the fact that she was aware of the policy against sexual harassment, and was

28

19

instructed in orientation to report it to someone immediately if you were being harassed." (*Id.*)  In response, Plaintiff argues - without citing to the evidentiary record - that she complained twice to other supervisors about Mr. Cortez's conduct.  (Opp. at 21.)  She also contends that any delay in using the EEO process to complain about Mr. Cortez's conduct was  due to fear of retaliation.  (Opp. at 21; Dkt. #33, Affidavit of Suzanne Mitchel, ¶17.)  The Court finds that based on the evidence as presented in the parties' briefs, a triable issue of fact exists as to whether Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities that the BOP provided at USP Atwater.

In sum, the Court finds that Defendant has failed to show that undisputed facts establish that the *Faragher/Ellerth* defense shields it from vicarious liability for Mr. Cortez's acts.  The Court therefore **DENIES** Defendant's request for summary judgment on this basis.

### 3.    Plaintiff's Motion for Summary Judgment

In a single paragraph in her Cross-Motion, devoid of any citations to the record, Plaintiff contends that she is entitled to summary judgment on her hostile work environment claim.  (Opp. at 24:2-10.)  However, as the discussion set forth above illustrates, the Court finds a triable issue of fact exists as to whether Mr. Cortez's conduct was so objectively hostile as to create an abusive working environment.  The Court therefore **DENIES** Plaintiff's request for summary judgment on this claim.

## C.    Plaintiff's Retaliation Claim

### 1.    Overview of the Parties' Arguments

In her Complaint, Plaintiff asserts a claim for retaliation against Defendants.[10]  (Compl.

---

[10]In her Complaint, Plaintiff alleges as follows:
(d) Retaliation.  In October 2006 and afterwards, [Plaintiff] engaged in a protected activity, to wit, she complained to the BOP's EEO office about Mr. Cortez's illegal behavior.  Thereafter, her employer engaged in adverse employment actions against her, including the following: a change in her work assignments; a reassignment of her work station to an area of the prison where she was subjected to additional, foreseeable harassment by inmates; the denial of promotions, training opportunities, and increases in grade and pay; and demeaning statements at work about her

¶10(d).)  The parties now dispute whether Plaintiff properly exhausted her administrative remedies before asserting the retaliation claim in this action.  In its Motion, Defendant argues that "Plaintiff simply alleged sexual harassment by FSA Cortez in her EEO complaint and made no mention of any reprisal."  (Mot. at 12.)  Defendant thus argues that "Plaintiff's reprisal claims, including her assignment to Religious Services, her re-assignment to the [w]arehouse and her absence from the national menu work group, were not properly exhausted."  (Mot. at 12.)  Accordingly, Defendant contends that this Court lacks jurisdiction over Plaintiff's retaliation claim, making dismissal appropriate.

Plaintiff, however, maintains that her EEO complaint contained allegations regarding retaliatory conduct and that communications between her and the EEO during its investigation alerted the EEO that she intended to assert a retaliation claim and that the EEO subsumed that evidence into its investigation, thereby also incorporating a retaliation claim as part of her EEO complaint.  (Opp. at 14-18.)  Plaintiff therefore contends that her retaliation claim is properly before this Court for resolution.

2.    Legal Standard - Exhaustion of Administrative Remedies

Generally, before pursuing a Title VII claim in district court, a plaintiff must exhaust his or her administrative remedies by filing a timely charge with the EEOC.  *Vasquez*, 349 F.3d at 644.  "The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation."  *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).  Specifically, "[s]ubject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of that charge."  *Vasquez*, 349 F.3d at 644.  In determining whether a claim is reasonably related to the EEOC charge, the Court "may consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of

character and her marital relations.  These adverse employment actions were caused by her decision to assert her legal rights and file a complaint about her harassment and discrimination.

(Compl. ¶10(d).)

21

1  discrimination named in the charge, and any locations at which discrimination is alleged to have

2  occurred." *Id.* (internal quotation and citation omitted). In engaging in this determination, the

3  Court construes the EEOC charge liberally. *Sosa*, 920 F.2d at 1456.

4

5      3.    Analysis

6      Throughout her briefs, Plaintiff variably cites and relies upon three different pieces of

7  evidence in support of her position that she exhausted her administrative remedies: (1) her EEO

8  complaint and supporting attachments; (2) a letter and fax her counsel submitted to the EEO during

9  its investigation of her complaint, and the EEO investigator's letter in response; and (3) the

10  transcript of her March 2007 EEO interview and resulting affidavit. The Court will evaluate each

11  piece of evidence, in chronological order.

12          a.    *Plaintiff's EEO Complaint*

13      In her Sur-Reply, Plaintiff asserts that she first raised allegations concerning retaliation in her

14  EEO complaint. (Dkt. #42, Pl. Sur-Reply at 1.) Specifically, Plaintiff points out that her "EEOC

15  [c]omplaint began by asking that there be 'no future retaliation' and ended by alleging that her two

16  supervisors threatened retaliation in a group meeting when rumors of her potential claim began to

17  circulate." (Pl. Sur-Reply at 1.) Defendant, however, argues that Plaintiff never identified

18  retaliation or reprisal as one of the charges asserted in her EEO complaint. Defendant points out that

19  in Plaintiff's Opposition she identified the basis of her retaliation claim as Warden Smith's decision

20  to transfer her out of Food Services and into the chapel, thereby assigning her to another abusive

21  work setting. (Dkt. #50 at 1.) Defendant contends that "[i]t is undisputed that neither the

22  [W]arden's conduct, nor [P]laintiff's job reassignment nor any sexual misconduct was mentioned in

23  [P]laintiff's administrative complaint." (Dkt. #50 at 1-2.)

24      Reviewing Plaintiff's EEOC complaint, in response to the instructions, "Check Below Why

25  You Believe You Were Discriminated Against," Plaintiff checked "sex," "Female," and "Sexual

26  Harassment." (Simon Decl., at Bates Nos. MUK000020; Pl. Sur-Reply, Ex. 4 at 1.) Although

27  "Reprisal" was one of the options, Plaintiff did not check this box. In response to the question,

28

22

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

"What Corrective Action Do You Want Taken on Your Complaint," Plaintiff indicated as part of her response, "No future retaliation." (Simon Decl., at Bates Nos. MUK000020; Pl. Sur-Reply, Ex. 4 at 1.) While Plaintiff argues that these statements were sufficient to alert the EEO that she intended to bring a retaliation claim, the fact that Plaintiff only referred to *prospective* retaliation and did not identify reprisal as one of the charges of her complaint undermines her argument. In particular, her reference to "no future retaliation," would not have led the EEO investigator to include retaliatory acts as part of the investigation. Likewise, although Plaintiff points to statements in her Attachment to the EEO complaint alleging that two supervisors threatened retaliation in a group meeting, Plaintiff did not select "reprisal" as one of the bases of discrimination on the first page of the complaint.

> ### b. *Plaintiff's Post-EEO Complaint Correspondence and Evidentiary Submissions*

Plaintiff also contends that in February 2007, her counsel sent the EEO a letter and a fax regarding evidence of on-going discriminatory conduct, including evidence of retaliation occurring after she filed her EEO complaint. (Opp. at 12-13; Sur-Reply at 1-2; Dkt. #48, Pl. Supp. Br. at 2-3.) Plaintiff initially argued that on February 27, 2007, her attorney sent a letter to Warden Smith stating that his decision to transfer Plaintiff out of Food Services to the chapel exposed her to "sexually abusive prisoner conduct" that "constitutes further gender discrimination in retaliation for her EEOC [c]omplaint." (Opp. at Sur-Reply at 1.) After briefing closed on the parties' Motions, on May 27, 2009, Plaintiff filed a letter indicating that the parties had discovered new evidence relating to her post-filing correspondence with the EEO. (Dkt. #46.) Specifically, Plaintiff contends that, in addition to the February 27, 2007 letter that her counsel sent to Warden Smith, her counsel also faxed 21 pages of new information to the EEO in support of her complaint. (Dkt. #47 at 1-3 & Ex. 3.) Plaintiff asserts that "[t]he [21] page fax covers a far broader range of retaliatory conduct than identified in the February 27 letter written by her attorney and includes documents relating to facts set forth in her interrogatory answers concerning retaliation." (Dkt. #48, Pl. Supp. Br. at 2.)

In response to this correspondence, on March 29, 2007, EEO Officer Mina Raskin sent

23

Plaintiff a letter notifying her that the EEO had received her February 27 letter and that the facts raised therein would be "subsumed" into the investigation of her complaint. (Sur-Reply at 2 & Ex. 3.) Based on this letter, Plaintiff asserts that "the EEOC effectively subsumed the following issues: (1) Mr. Cortez's ongoing threats and harassment against [her;] (2) [P]laintiff's stated belief that she was the victim of retaliation by the prison[;] (3) the detrimental effects of her being moved out of Food Services (originally to the [c]hapel and later to the [w]arehouse)[;] and (4) ongoing hostility to her claim by highest management." (Pl. Suppl. Br. at 2-3.) Further, Plaintiff contends that the EEO's statement resolved any questions about whether she was required to file an amended complaint to assert a retaliation claim. (Sur-Reply at 2.) In response, Defendant argues that the "March 29, 2007 letter 'subsum[ing]' additional evidence was intended only to inform [P]laintiff that the additional evidence was being considered in connection with already-pending discrimination claims, not new retaliation claims." (Dkt. #50 at 2.)

Taking a closer look at Plaintiff's February 27 letter to Warden Smith, in the letter Plaintiff expressly asserts that the decision to transfer her to the chapel amounted to retaliation for her act of filing an EEO complaint. It is unclear, however, whether the EEO received a copy of this letter or whether it was part of its investigation file. Examining the February 27, 2007 fax from Plaintiff's counsel to the EEO, the documents include statements from Plaintiff alleging that: (1) after she filed her EEO complaint, Warden Smith and Associate Warden Gant no longer wanted Plaintiff in the warehouse or to have contact with vendors (Dkt. #47, Ex. 3, at 4); (2) Plaintiff believed that she was being retaliated against based on her supervisors' failure to protect her from further abuse by Mr. Cortez, as evidenced by his sub-par quarterly evaluations of Plaintiff (Dkt. #47, Ex. 3 at 6); and (3) Plaintiff informed Associate Warden Avalos that she did not like being displaced from her job and that the transfer had left her "floundering." (Dkt. #47, Ex. 3 at 7). Thus, based on these statements, Plaintiff at least presented some allegations of retaliatory conduct to the EEO in February 2007.

Turning to the March 29 letter from the EEO, while both Plaintiff and Defendant contend that the letter unequivocally supports their respective positions, the language they rely on is ambiguous at best. Specifically, in response to the additional evidence Plaintiff submitted, EEO

Officer Mina Raskin explained: "Per your request, the information you provided will be considered as additional evidence and will be subsumed, as evidence into the investigative report prepared on your complaint." (Dkt. #34, Schallert Decl., Ex. D.) Notably, the letter acknowledges that Plaintiff's additional allegations - which included the allegations regarding retaliatory conduct - became part of the EEO's investigation into her pending complaint. At the same time, however, the letter does not indicate that the original scope of Plaintiff's EEO complaint was amended or otherwise formally expanded to include a retaliation claim. The letter also does not advise Plaintiff that she must file an amended EEO complaint in order to proceed with any retaliation claim. Ultimately, it is unclear what effect the EEO's decision to "subsume" Plaintiff's additional evidence had on the scope of the claims asserted in her EEO complaint.

> c. *Plaintiff's EEO Deposition / Affidavit*

In their briefs, both Plaintiff and Defendant selectively cite portions from the transcript of the EEO's March 14, 2007 examination of Plaintiff and her resulting affidavit. (Simon Decl., Bates Nos. MUK000210-259.)

Defendant contends that during the examination, the EEO investigator informed Plaintiff and her counsel that she would have to file an amended complaint if she intended to assert a retaliation claim. (Reply at 5-6.) Specifically, Defendant cites the following discussion:

> REP: [Attorney David Doyle]: This is David again. There will be a monetary component to this. We have not gotten as far as estimating it, but there have been recent developments here. She was retaliated against by being sent to work in the Chaplain's office. She has not been put back into Food Services, and she's been exposed to . . . .
>
> A: [Plaintiff] Well, they won't allow me to go back to my previous duty schedule or my hours, they've changed my hours. They won't let me go back to my previous schedule.
>
> REP: What we're saying is there are a lot of events that occurred recently that are also relative.
>
> Q [EEO Investigator]: I will contact the EEO office to see if we're due an amendment to this complaint. If that's the case I will do another interview based on those amendments, okay?
>
> A: Okay.
>
> REP: Holly, let me try and get things straight here. It's may

25

understanding that every act of retaliation that occurs, she needs to do an amendment?

Q: Yes, because retaliation is actually a basis for a complaint.

REP: Okay, I can understand that, but the subsequent actions to an act of Mr. Cortez and the Bureau of Prisons are further evidence of what has occurred, et cetera, so I think what happened recently is relevant.

(Dkt. #38, Suppl. Simmons Decl., Ex. 2 at 2-3; Simon Decl., Bates Nos. MUK000251–52.) Thus, Defendant contends that "not only was [P]laintiff and her counsel instructed that an additional administrative complaint would have to be filed, but [P]laintiff and her counsel both acknowledged that they were informed of and understood the rule requiring that she file a new administrative complaint." (Reply at 6.) Defendant therefore argues that the record is clear that in submitting the additional evidence in February 2007, "Plaintiff merely sought to add additional *support of her original claim* of discrimination." (Reply at 6.)

Plaintiff, however, contends that during the interview her counsel specifically notified the EEO investigator that she had been retaliated against by being transferred to the chapel, and further explained that this decision was part of a continuing course of harassing conduct against her. (Sur-Reply at 2.) In support,, Plaintiff cites the following exchange:

REP: I want to be on the record for this. Among the separate forms of retaliation, we felt this was relevant to the investigation, and we will talk to the EEOC about the fact that they are attempting to limit this investigation, which is part of what occurred throughout this process. I mean, we have a situation here - put me on the record.

Q: You are.

REP: This is Dan Doyle. We would like to indicate our objection to the limitations placed upon this investigation. We have a continuing course of conduct here in which my client has been continually subjected to harassment, including being transferred to the Chaplin's officer where she had the experience of having an inmate masturbating in front of her. She has since then contacted the Bureau and asked to be taken out of that job. She was put back in Food Services. She is under the de facto supervision of Mr. Cortez again. Cortez is supposed to be off of the business premises. He is not. She ended up in a situation in which she had to tour a part of the prison with Mr. Cortez. It is believed that Mr. Cortez intentionally walked behind her in order to observe her. [ . . . . ]

(Pl. Sur-Reply, Ex. 5 at 48.) Plaintiff also contends that during the examination, the EEO

1   investigator twice stated that she would consult with the EEO offices in Washington DC regarding

2   whether the EEO would amend her complaint in light of the additional evidence she submitted. (Sur-

3   Reply at 2 & Ex. 5 at 8, 42.)[11]

4       As the foregoing excerpts demonstrate, during the March 14 examination Plaintiff and her

5   counsel informed the EEO investigator that she believed she had been retaliated against after filing

6   her complaint and that she had submitted new evidence in support of that allegation.  In response,

7   the EEO investigator at one point informed Plaintiff that she would have to formally amend her

8   complaint to assert a retaliation claim, and at another point, that she would contact the EEO office to

9   determine whether an amendment was "due."  Thus, the EEO investigator's statements are unclear

10  as to whether Plaintiff bore the burden of amending her complaint, or whether the EEO was going to

11  make the determination whether an amendment was required.  What is beyond dispute, however, is

---

13      [11]Specifically, Plaintiff proffers the statement excerpted above, that the EEO investigator indicated that she would "contact the EEO office" to see whether an amendment to the complaint

14  was "due."  (Pl. Sur-Reply at 2 n.2 & Ex. 5 at 42; Simon Decl., Bates No. MUK000251.)  Plaintiff also cites the following statement:

15

16         A:  Okay, I have one question before we start with that, though.  I sent some additional information to Roy Ferguson, the EEO Specialist in

17         D.C., and I don't know if he forwarded that information on to you.

18

19         Q:  I have not received it but is it related to the August '05 through October 3,  '06 events?  Was it the . . .

20         A:  Yes.

21

22         Q:  It was?

23         A:  After that.

24         Q:  It was after that?  What they are probably doing is reviewing it and determining whether they will amend this complaint.  Since it not

25         within that date period, they are not going to forward it to me unless or until they amend or refile a complaint, ok?

26

27  (Pl. Sur-Reply at 2 n.2 & Ex. 5 at 8; Simon Decl. Bates Nos. MUK000216-17.)

28

1   that Plaintiff did at least alert the EEO investigator that she had submitted evidence regarding

2   retaliatory treatment in the form of her transfer to a different work area.

3          *d.      Relationship Factors*

4         As discussed in prior sections, Plaintiff has alleged that actions and comments of a sexual

5   nature by Mr. Cortez created a hostile work environment.  Plaintiff's retaliation claim, which

6   morphs throughout her briefs, appears to be based on her transfer to the chapel area, sub-standard

7   performance evaluations, and the decision to prohibit her from interacting with food vendors.  As to

8   her claim that her transfer to the chapel amounted to retaliation, both parties have noted that there is

9   evidence - although disputed - that the transfer was based on the need to separate Plaintiff from Mr.

10  Cortez to avoid any future harassing conduct.  Thus, the facts underlying this theory of retaliation

11  overlap with Plaintiff's hostile work environment claims based on Mr. Cortez's conduct.  With

12  respect to Plaintiff's other alleged theories of retaliation - namely, sub-standard evaluations and

13  restricted job duties - the underlying factual basis for these theories do not overlap with Plaintiff's

14  sexual harassment claims concerning Mr. Cortez's conduct.  In other words, an investigation of

15  these theories of retaliation would not necessarily entail investigating Mr. Cortez's alleged offensive

16  conduct.

17        With respect to the dates of discriminatory acts specified with the charge, Plaintiff's

18  allegations regarding Mr. Cortez begin in August 2005 and continue until after she filed her EEO

19  complaint, into early 2007.  Because Plaintiff alleges that she was retaliated against after she filed

20  her EEO complaint, some of Mr. Cortez's alleged offending actions may overlap in time with the

21  retaliatory conduct.

22        With respect to the perpetrators of the discriminatory conduct, Plaintiff's harassment claim is

23  founded on statements and conduct by Mr. Cortez.  The perpetrators of her retaliation claims,

24  however, are more difficult to pin down.  At various points in her briefs, Plaintiff identifies Warden

25  Smith, "the Associate Warden," and "the prison" as the perpetrators of the retaliatory conduct.

26  Plaintiff's allegations of retaliatory conduct thus involve different individuals than those at the

27  center of her sexual harassment claim against Mr. Cortez.

28

Finally, as to the locations at which the discrimination is alleged to have occurred, all of Plaintiff's allegations relating to both her sexual harassment claim and her retaliation claim took place at USP Atwater. Accordingly, the locale of all of the alleged conduct is the same.

### e. Conclusion

The Court has carefully considered all of the foregoing evidence and finds that, with respect to Plaintiff's claim that her transfer to the chapel was in retaliation for her filing her EEO complaint, Plaintiff submitted adequate information to the EEO based on the February 27 letter and fax and based on the statements made to the EEO investigator during her March 14 examination, such that her retaliation claim premised on the job transfer could reasonably have grown out of the EEO's investigation of Mr. Cortez's alleged harassing conduct.[12] With respect to Plaintiff's other proffered bases for retaliation, the Court finds that Plaintiff has not demonstrated that the EEO's investigation would have led it to investigating such charges as potential retaliation claims. The fact that Plaintiff may have used the term "retaliation" when describing certain actions does not fulfil her obligation to properly exhaust her administrative remedies as to such allegations. *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002). Accordingly, the Court finds that its jurisdiction is limited to adjudicating Plaintiff's retaliation claim based on her transfer to the chapel area.

### 4. Plaintiff's Motion for Summary Judgment

In her Cross-Motion, Plaintiff moves for summary judgment on her retaliation claim. To prevail on a retaliation claim under Title VII, a plaintiff must establish: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). As to the first element, Plaintiff contends

---

[12] The Court further notes that the question of whether Plaintiff sufficiently exhausted her administrative remedies as to this claim is a close call. While the more cautious approach for Plaintiff would have been to formally amend her EEO complaint to ensure that her retaliation claim was properly asserted, the ambiguous and inconclusive statements by the EEO representatives on this issue left Plaintiff in a position of not knowing whether further action was required on her part with respect to amending her complaint.

that she was involved in a protected activity when she filed her EEO complaint. (Opp. at 24.) As to the second element, she contends that the "adverse employment decision is two fold [sic]: [Plaintiff] being moved out of Food Services (instead of Mr. Cortez) and her assignment to an abusive setting." (Opp. at 24.) As indicated above, the Court finds that its jurisdiction is limited to Plaintiff's claim based on her transfer out of Food Services. With respect to the third and final element examining the causal connection between the protected activity and the adverse employment action, Plaintiff fails to proffer any argument or point to any evidence in support. For these reasons, summary judgment for Plaintiff is inappropriate. Furthermore, Defendant has argued that the decision to move Plaintiff out of Food Services was reasonably necessary for business reasons and thus permissible. Specifically, Defendant contends that because Mr. Cortez was the Food Services Administrator responsible for the entire food operation at USP Atwater, BOP had a business necessity to keep him in place rather his administrative assistant (Plaintiff), while the investigation was underway. (Dkt. #37, Def. Reply at 11.)[13] The Court finds that this evidence is sufficient to create a triable issue of fact precluding summary judgment on Plaintiff's retaliation claim.

## C.   Exhaustion of Claim for May 2006 Non-Selection for Budget Analyst Position

Finally, Defendant contends that Plaintiff failed to exhaust her administrative remedies with respect to any claim based on non-selection for a budget analyst position. (Mot. at 12.) Defendant argues that, according to Plaintiff's deposition testimony, the events giving rise to the non-selection claim occurred on May 10, 2006 - four months prior to her initial EEO counselor contact. (Mot. at 13.) Because Plaintiff did not initiate EEO counselor contact within 45 days of the putative act of discrimination, as required by 29 C.F.R. § 1614.105(a)(1), Defendant asserts that any non-selection claim is subject to dismissal. (Mot. at 13.) Plaintiff has not proffered any argument in response. Accordingly, the Court will **GRANT** Defendant's Motion on this claim.

## IV.   CONCLUSION

---

[13]In support of this assertion, Defendant cites Exhibit 4 to the Supplemental Declaration of Abraham Simmons. Nothing in Exhibit 4 even relates to this assertion. However, Warden Smith's deposition testimony contained at Dkt. #28, Declaration of Abraham Simmons, Exhibit 2 at 48:23-49:22 does support Defendant's argument.

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (Dkt. #25), and **DENIES** Plaintiff's Cross-Motion for Summary Judgment (Dkt. #32).

**IT IS SO ORDERED.**

Dated: March 9, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge